## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 13-59657 |
| | : | |
| **STAR Dynamics Corporation** | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Charles M. Caldwell |

## MOTION OF STAR DYNAMICS CORPORATION, DEBTOR AND DEBTOR-IN-POSSESSION, FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION; (2) AUTHORIZING POST-PETITION SECURED FINANCING WITH PRIORITY AS AN ALLOWED ADMINISTRATIVE EXPENSE; AND (3) SCHEDULING A FINAL HEARING

STAR Dynamics Corporation, the Debtor and Debtor-in-Possession in this Chapter 11 case ("Debtor" or "STAR")[1] moves the Court pursuant to the provisions of 11 U.S.C. §§105, 361, 363, 364(c) and 503(b), Federal Rules of Bankruptcy Procedure 2002, 4001, 6004 and 9014 and Local Bankruptcy Rules 4001-2, 4001-3 and 6004-1 to (i) enter interim and final orders authorizing the Debtor to use cash collateral and to grant adequate protection upon terms and conditions set forth below; (ii) enter interim and final orders authorizing the Debtor to obtain post-petition financing in the aggregate principal amount of up to $2,525,000 secured by junior liens on all property of Debtor's bankruptcy estate (other than causes of action accruing under Chapter 5 of the Bankruptcy Code) pursuant to § 364(c)(3) of the Bankruptcy Code, and having priority as an administrative expense of the kind specified in § 503(b) of the Bankruptcy Code; and (iii) schedule an preliminary hearing and a final hearing on this Motion.  In support of this Motion, the Debtor respectfully states and represents as follows:

---

[1] Unless otherwise noted herein, capitalized terms shall have the meaning ascribed to them in the proposed Interim Order attached hereto as Exhibit B.

1.      No creditors' committee has yet been appointed in this case by the United States Trustee.  No trustee or examiner has been appointed in this Chapter 11 case.

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding under 28 U.S.C. §157(B)(2).

3.      The statutory predicates for the relief requested herein are Sections 105(a), 361, 363, 364(c) and 503(b) of the Bankruptcy Code, Federal Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Bankruptcy Rules 4001-2, 4001-3 and 6004-1.

### BANKRUPTCY RULE 4001(b)(1)(B)and (c)(1)(B) CONCISE STATEMENT OF RELIEF REQUESTED

4.      In accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B), the Debtor submits that the following is a concise statement of  relief requested.  Pursuant to § 363 of the Bankruptcy Code, the Debtor requests authority to use cash collateral pursuant to the terms of the Interim Order and a final order to be entered after a final hearing.  The Debtor's use of cash collateral will provide working capital to the Debtor for use in its operations in accordance with the Budget attached hereto as Exhibit A (the "Budget").  Because immediate and irreparable harm will result if the Debtor cannot use cash collateral pending a final hearing, the Debtor seeks a preliminary hearing before the Court in order to obtain authorization to use cash collateral on an interim basis.  The Debtor also seeks authority to borrow up to $2,525,000 from Thomas Becnel (the "DIP Lender" or "Mr. Becnel"), on a post-petition, secured basis, with liens on all property of the Debtor's bankruptcy estate (other than causes of action accruing under Chapter 5 of the Bankruptcy Code) junior to all valid and subsisting liens in existence on the Petition Date, and with the Debtor's obligation to repay any such post-petition borrowing having priority as an administrative claim pursuant to Section 503(b) of the Bankruptcy Code.   The Debtor's

2

borrowings on such post-petition basis will provide further working capital to the Debtor for use in its operations in accordance with the Budget.  Again, because immediate and irreparable harm will result if the Debtor cannot obtain certain post-petition financing pending a final hearing, the Debtor seeks a preliminary hearing before the Court in order to obtain authorization to obtain such financing on an interim basis.

5.      Based upon the Debtor's books and records, and its review of the online public records maintained by the Ohio Secretary of State, the Debtor contends that Whitney Bank ("Whitney") and Mr. Becnel, respectively, have security interests in the Debtor's cash collateral.

6.      The Debtor simply proposes to use the cash collateral, as such term is defined in Section 363(a) of the Bankruptcy Code, and provide adequate protection of the respective security interests of Whitney and Mr. Becnel by (i) re-granting post-petition liens to Whitney and Mr. Becnel, respectively, with Whitney's post-petition lien to be superior in all respects to Mr. Becnel's post-petition lien, to the same extent, amount, and priority as their respective pre-petition security interests in cash collateral in existence on the Petition Date, without the necessity of the re-filing of any UCC Financing Statement or other documents, (ii) using cash collateral only in accordance with the Budget, and (iii) providing the other protections described in the Interim Order.  The proposed duration for the use of cash collateral is thirteen (13) weeks. The Debtor also simply proposes to incur post-petition financing of up to $2,525,000 from the DIP Lender, and to grant to the DIP Lender post-petition security interests and liens against all property of the Debtor's bankruptcy estate (other than causes of action accruing under Chapter 5 of the Bankruptcy Code), such post-petition security interests and liens to be junior in all respects, including in terms of ranking and payment, to all valid and subsisting security interests and liens in existence on the Petition Date, including, without limitation, all security interests and

liens held by or in favor of Whitney, and with the Debtor's obligation to repay any such post-petition borrowing having priority as an administrative claim pursuant to Section 503(b) of the Bankruptcy Code.

## BACKGROUND

7.      STAR is a corporation formed under the laws of the State of Ohio on or about December 21, 1994.  STAR was originally incorporated under the name Aeroflex Acquisition Corporation.  Aeroflex Acquisition Corporation underwent several name changes throughout the years until May 22, 2008, when it changed its name from Aeroflex Powell, Inc. to STAR Dynamics Corporation.  STAR is owned by three separate shareholders, TAZ Ventures, LLC ("TAZ") owning 45% of the outstanding shares, STAR Dynamics Holdings, LLC ("STAR Holdings") owning 45% of the outstanding shares, and Dr. Jerry Jost ("Dr. Jost"), who is also the President of STAR, owning 10% of the outstanding shares.  TAZ and STAR Holdings are each solely owned by family members of Mr. Becnel.

8.      STAR is in the business of developing, marketing, selling and servicing instrumentation radar systems, including time, space, and position information ("TSPI") tracking radar systems, in the United States, the United Kingdom, Europe, Asia and Australia (the "Business").  STAR's radar products and services are typically used in connection with U.S. and foreign government test ranges, which are dedicated surface and air spaces where militaries test and train with missiles and other weaponry.  STAR currently does business with and is under contract to provide radar products to the United States military, the Swedish Defence Materiel Administration (FMV), the Korean ADD, and the Israeli Ministry of Defense and in the past has also done business with the Taiwan CSIST and France's CNES.

9.      STAR's principal place of business is located in Hilliard, Ohio, but STAR maintains additional offices in Herndon, Virginia and Sandestin, Florida (collectively, the "Business Locations"). As of the Petition Date, STAR employed 112 individuals on a full-time basis. Of these employees, ninety-six (96) are Ohio residents who reside in or around Columbus, Ohio. The remaining employees are split between Herndon, Virginia, with ten (10) employees, Sandestin Florida, with five (5) employees, and New Mexico, Georgia and Pennsylvania each with one (1) employee. The day-to-day operations of STAR are largely overseen by its Chief Executive Officer, Dr. Jost, and its Chief Financial Officer, Kevin Collis. The Board of Directors of STAR is comprised of Dr. Jost and Mr. Becnel. As of November 30, 2013, STAR's books and records reflect total assets having a book value of $28,470,788.13, and total liabilities of $50,892,360.12. STAR's books and records also reflect year to date gross sales through November, 30, 2013, of $8,140,140.93.

10.      STAR (or its predecessor company) has been a leading national and international supplier of precision Radar Cross Section ("RCS") measurement radar systems. In addition to RCS, STAR has emerged as a leading company in the field of instrumentation radar technology and offers a range of products including its XSTAR, GTARS, VSTAR, SARBAR, and NESDOR radars. STAR's XSTAR radar utilizes its innovative, cutting-edge antenna to receive and signal processing technology, allowing the radar to send out multiple simultaneous beams of energy and track multiple targets at once, as opposed to the traditional one beam, one target radar.

11.      For the past year, STAR has been embroiled in contentious litigation commenced against STAR by an entity known as BAE Systems Technology Solutions & Services Inc. ("BAE") in the Franklin County Court of Common Pleas, (the "State Court"), styled as *BAE Systems Technology Solutions & Services Inc. v. STAR Dynamics Corporation*, Case No 12-CV-

014372 (the "State Court Litigation"). The State Court Litigation has been conducted largely under seal due to the sensitive nature of STAR and BAE's respective businesses. In its complaint, BAE asserted six causes of action against STAR: (1) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"); (2) unfair competition; (3) tortious interference with contract; (4) tortious interference with prospective business expectancy; (5) aiding and abetting breach of fiduciary duty; and (6) aiding and abetting breach of duty of loyalty. The State Court, upon motion of STAR for partial judgment on the pleadings, dismissed all counts except the count for misappropriation of secrets. In June of 2013, prior to the State Court's dismissal of all but one of BAE's claims, BAE moved the State Court to preliminarily enjoin STAR from certain specified activities. BAE's motion to preliminarily enjoin STAR was heard before a magistrate, who issued a recommendation on July 30, 2013 (the "Magistrate Decision"). The Magistrate Decision recommended that STAR be enjoined from further negotiations with certain parties for the purpose of engaging in a specific project in Europe. In addition, the Magistrate Decision recommended that STAR be enjoined from engaging in any competitive bidding, or accepting any contracts on projects for which BAE has submitted a bid, or intends to submit a bid. The State Court adopted the Magistrate Decision on that very same day on an interim basis (the "Interim Order"). The State Court subsequently entered an order clarifying the injunctive relief previously granted in the Interim Order, and enjoined STAR on an interim basis from, *inter alia*, bidding on specific projects identified by BAE, using or disclosing any of the alleged trade secretes identified by BAE, and developing STAR's CSTAR radar system. STAR vigorously objected to the Magistrate Decision, which objection is still pending before the State Court. As of the Petition Date, the Interim Order has expired and the State Court has yet to issue a final order relative to BAE's motion requesting preliminary injunctive relief.

12.     Over the past four years, in addition to institutional lending, the finances of STAR have been supported by loans and advances made by Mr. Becnel.  In particular, from September of 2009, through November of 2013, Mr. Becnel has provided funding for STAR in the aggregate amount of $33,480,000.  As of the Petition Date STAR owed Mr. Becnel in excess of $32,000,000.  As is discussed below, a portion of such debt is secured.

13.     In light of this continuing need for funding, coupled with the distractive nature of the State Court Litigation, STAR determined that its best course of action would be to put itself up for sale.  Consequently, in October, 2013, STAR engaged Sagent Advisors, LLC ("Sagent") to assist in obtaining a transaction for a sale of all or substantially all, of STAR's assets.  Sagent is an independent investment banking firm headquartered in New York, NY, that provides merger and acquisition and other financial advice for its clients.  STAR is informed and believes that Sagent possesses industry specific expertise in the aerospace, defense and technology sectors.  As a part of this process, a "data" room has been established and Sagent has begun the process of cultivating interested parties.

14.     STAR believes that the chapter 11 bankruptcy process will prove to be the best forum to maximize the value of its assets through a transaction for the sale of all or substantially all, of its assets under Section 363 of the Bankruptcy Code, while at the same time continuing its day-to-day operations on a "business as usual" basis.  Consequently, STAR initiated this chapter 11 proceeding to provide a forum for such process.

**SUMMARY OF PARTIES WHO HAVE A LIEN OR INTEREST IN THE CASH COLLATERAL OF THE DEBTOR**

15.     The Debtor submits that, as of the commencement of this chapter 11 case, the indebtedness due to Whitney in the approximate amount of $12,100,000 is secured by security interests and liens held by Whitney in all of the Debtor's present and hereafter acquired accounts,

chattel paper, equipment, general intangibles, inventory and all proceeds and products therefrom,

(collectively, the "Whitney Prepetition Collateral"), from which is excluded certain specified

equipment that has been the subject of separately filed releases,.

16.     Whitney's security interests in and liens on the Whitney Prepetition Collateral,

which includes cash collateral, arise by virtue of, *inter alia*, the following documents[2]:

1.   Commercial Business Loan Agreement for Lines of Credit dated as of May 14, 2008, as amended by twelve Amendments, the last of which is dated as of December 31, 2012;
2.   Commercial Note dated December 31, 2012 in the original principal amount of $7,000,000;
3.   Commercial Security Agreement dated May14, 2008;
4.   UCC Financing Statement No. OH00126845394 filed at the Ohio Secretary of State, May 20, 2008;
5.   UCC Financing Statement (Continuation) file no. 20130320346 filed at the Ohio Secretary of State, February 1, 2013.
6.   Application and Agreement for Standby Letter of Credit dated May 13, 2008, as amended.

17.     The Debtor further submits that, as of the commencement of this chapter 11 case,

a portion of the indebtedness due to Mr. Becnel, in the approximate amount of $200,000, is

secured by a security interest, junior to Whitney, in virtually all of the Debtor's present and

hereafter acquired assets, including goods, accounts, chattel paper, equipment, general

intangibles, inventory, contract rights or rights to payment of money, leases, license agreements,

franchise agreements, documents, instruments and all proceeds and products therefrom

(collectively, the "Becnel Prepetition Collateral").

18.     Mr. Becnel's security interest in the Becnel Prepetition Collateral, which includes

cash collateral, arises by virtue of, *inter alia*, the following documents[3]:

1.   Promissory Note and Security Agreement dated December 5, 2013 in the original principal amount of $200,000;

---

[2] Debtor notes that concurrent with the filing of this Motion, it filed its "Exhibits to Cash Collateral/DIP Financing Motion" containing the documents referenced below.
[3] Debtor notes that concurrent with the filing of this Motion, it filed its "Exhibits to Cash Collateral/DIP Financing Motion" containing the documents referenced below.

2.     UCC Financing Statement receieved at the Ohio Secretary of State, December 6, 2013;

## BASIS FOR AUTHORITY TO USE CASH COLLATERAL

19.     As described above, the Debtor contends that Whitney and Mr. Becnel each have security interests and liens encumbering the Prepetition Collateral.  Whitney, Mr. Becnel and their respective interests have been identified and summarized above, and copies of the documents under which their respective security interests arise are filed with the Court as the "Exhibits to Cash Collateral/DIP Motion", in satisfaction of the provisions of Local Bankruptcy Rule 4001-2.

20.     The Debtor's assets and the proceeds thereof now owned or hereafter acquired by the Debtor, including the Debtor's cash, may constitute cash collateral within the meaning of Section 363(a) of the Bankruptcy Code.  Whitney and Mr. Becnel have interests in the Debtor's cash collateral.

21.     The Debtor intends to continue to finance, in part, the operations of its business and its administrative fees during this Chapter 11 case through the continued use of cash collateral in the form proceeds of inventory and general intangibles, as well as from the proceeds to be generated by the eventual sale of all, or substantially all, of its assets under Section 363 of the Bankruptcy Code.  The Debtor proposes to use cash collateral to fund general business needs, including the payment of its payroll, taxes, utilities, the purchase of necessary supplies and services, to replace its inventory, and to pay fees and expenses related to this Chapter 11 case, including the fees of professionals.  The Debtor's use of cash collateral would be limited to the line items of expense categories set forth in the Budget.  The Debtor proposes to grant Whitney and Mr. Becnel adequate protection with respect to their respective interests in cash collateral, by granting Whitney and Mr. Becnel replacement liens in post-petition cash collateral, to the extent

of, and in the same relative priority as, their valid and subsisting liens and interests as held by

each in cash collateral as of the Petition Date.  Such replacement lien in favor of Whitney shall

be superior in all respects, including without limitation, ranking and payment, to any security

interest or lien granted to Mr. Becnel and/or the DIP Lender.

22.     The Debtor does not have sufficient available sources of working capital and

financing to operate its business (and fund the chapter 11 fees and expenses) without the use of

the cash collateral.  The Debtor has an immediate need to use the cash collateral to, among other

things, continue to purchase various products from its vendors and pay other routine operating

expenses, such as payroll, lease payments, taxes, or other obligations, to make certain debt

service, letter of credit fee, and credit card payments, and to pay fees and expenses related to this

Chapter 11 case, including the fees of professionals. In the absence of immediate authorization of

the use of the cash collateral, the Debtor cannot continue to operate its business, and immediate

and irreparable harm to the Debtor and this estate will occur.

23.     In addition, continued access to its cash collateral will provide the Debtor's

customers and vendors with the requisite security that the Debtor will be able to continue

conducting its business, without interruption, and will ensure that maximum value of the

Debtor's assets can be realized.

24.     The Debtor's Budget demonstrates that the Debtor requires use of the cash

collateral to pay present operating expense, including payroll, and to pay vendors to ensure a

continued supply of services and material essential to the Debtor's continued viability. If unable

to use the cash collateral, the Debtor would be unable to operate its business.

25.     Under Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash

collateral without the consent of each entity that has an interest in cash collateral or by the

authority granted by the Court. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest. The Debtor submits that the adequate protection to be provided to Whitney and to Mr. Becnel is sufficient to approve the use of the cash collateral under Section 363 of the Bankruptcy Code.

26.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. See In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); In re O'Connor, 808 F2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (see, e.g., 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to be safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization"); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Whitney is adequately protected because its security interest will be re-granted in and to the post-petition assets to the extent of the validity and priority of its pre-petition lien. Mr. Becnel is adequately protected in the same manner and to the same extent, albeit with a replacement lien inferior to that to be granted to Whitney.  These provisions are a traditional means of provide adequate protection.

27.     Adequate protection is also provided to Whitney and Mr. Becnel by the Debtor only spending cash collateral in accordance with the line items of expense categories set forth in the Budget and by the reporting that the Debtor will make to Whitney and Mr. Becnel.

28.     In connection with its agreement to not oppose this Motion, Whitney requires and Debtor expressly agrees:

a.      That, prior to and as a condition of the granting of this Motion, the express written consent of the guarantors of Debtor's indebtedness to Whitney – Mr. Becnel and Silver Shells, LLC – to *inter alia* any amendments or modifications of the terms and conditions of the indebtedness owed Whitney, which amendments or modifications may arise, either expressly or implicitly, from any relief (whether interim or final) granted in connection with this Motion, and that such consent must be offered and filed by Debtor, and then admitted, into evidence as part of any hearing on this Motion, such express written consent of those guarantors to be in form and substance acceptable to and approved by Whitney in its sole and arbitrary discretion;

b.      That, upon request by Whitney, Debtor shall immediately file a motion seeking, on an expedited basis, this Court's formal approval of an extension, with written consent of the guarantors, of the Whitney term loan facility, which matures on January 31, 2014, and, upon timely request, Debtor shall use its best efforts to obtain such approval by no later than January 30, 2014; and

c.      Whitney shall have the right to file any objection or response to the Motion or final relief sought by Debtor for purposes of the Final Hearing.

## THE DEBTOR IN POSSESSION FACILITY

29.     In addition to the use of cash collateral, by this Motion, Debtor also seeks, *inter alia*, entry of an interim and then a final order pursuant to §§ 105 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(c) and 9014, (a) authorizing the Debtor to obtain post-petition credit under a debtor in possession credit facility (the "DIP Facility") provided by the DIP Lender consisting of a revolving credit facility of up to a principal amount of $2,525,000, and (b) scheduling a final hearing and establishing notice and objection procedures thereof.

30.     The Debtor will use the DIP Facility to provide working capital for its post-petition operations to the extent cash collections may be insufficient to fund all projected cash disbursements, as reflected in the Budget.

31.     The key economic terms of the proposed DIP Facility include the following:

a.   <u>Type and Amount</u>.   The Debtor is authorized to borrow on a revolving credit basis, and the DIP Lender will be authorized to advance, in his sole discretion, a maximum principal amount of $2,525,000, subject to such commercially reasonable terms and conditions as may be contained in any final version of a revolving credit note to be executed and delivered by the Debtor to the DIP Lender upon the Court's approval of this Motion, subject in all respects to the ranking and other provisions in favor of Whitney as set forth above.[4]

b.   <u>Term</u>.   The term shall expire upon the earlier of (i) the expiration of the period reflected in the Budget, or (ii) the closing of any sale of all, or substantially all of the Debtor's assets pursuant to a transaction approved in this chapter 11 case.

c.   <u>Interest</u>.   6.00% per annum.

d.   <u>Security</u>.   To secure all obligations of the Debtor in connection with the DIP Facility, the DIP Lender will receive, pursuant to § 364(c)(3) a fully perfected post-petition security interest in all assets, whether now existing or hereafter arising, of the Debtor, including all substitutions, replacements, accessions, products or proceeds thereof, subject and junior in all respects, including without limitation in terms of ranking and payment, to the liens and security interests of or held by Whitney, including without limitation in and to the Whitney Prepetition

---

[4] In the event the Court approves the interim relief requested hereby, the Debtor will cause such documents to be filed promptly upon their completion.

Collateral, to the liens and security interests of or held by Mr. Becnel, including

without limitation in and to the Becnel Prepetition Collateral, and of any other

party existing as of the Petition Date, and the post-petition liens and security

interests granted and/or regranted to Whitney and Mr. Becnel under any interim

or final Order granting this Motion.  Additionally, the security interest granted to

the DIP Lender shall not encumber any causes of action accruing in favor of the

Debtor's estate under chapter 5 of the Bankruptcy Code.

  *e.*  <u>Administrative Claim</u>.  The Debtor's obligation to repay amounts advanced under

  the DIP Facility will be entitled to priority as an administrative expense under §

  503(b) of the Bankruptcy Code.

### APPROVAL OF THE DIP FACILITY IS WARRANTED
### UNDER THE CIRCUMSTANCES

32.    Pursuant to § 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its

business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit

and the borrowing is in the best interests of the estate.  *In re Simasko Products Co.*, 47 B.R. 444,

448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtors' best business

judgment indicated financing was necessary and reasonable for benefit of estate); *In re Ames*

*Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts

"permit debtors-in-possession to exercise their basic business judgment consistent with their

fiduciary duties"); see also 3 *Collier on Bankruptcy*, ¶ 364.03, at 364-7-18 (15th ed. Rev. 1999).

§ 364(c) of the Bankruptcy Code provides in pertinent part:

  (c)    If the trustee [or debtor in possession] is unable to obtain unsecured credit
  allowable under § 503(b)(1) of this title as an administrative expense, the court, after
  notice and a hearing, may authorize the obtaining of credit or the incurring of debt:
      (1)    with priority over any and all administrative expenses of the kind
      specified in § 503(b) or 507(b) of this title;

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

33.     Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under § 364(c) of the Bankruptcy Code; whether (i) the debtor is unable to obtain unsecured credit under § 364(b), i.e., by allowing a lender only an administrative claim; (ii) the credit transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.  *See, e.g.,* In re *Farmland Indus., Inc.*, 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

34.     In satisfying the standards of § 364, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Bankruptcy Code §§ 364(a) and (b).  *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also Ames*, 115 B.R. at 40 (debtors demonstrated the unavailability of unsecured financing where debtors approached several lending institutions); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (same); *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing.") *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

35.     The Debtor is unable to obtain credit that is not secured.  As noted above, the Debtor's pre-petition obligations to Whitney, and a portion of the Debtor's pre-petition

15

obligations to Mr. Becnel, are secured by substantially all of the Debtor's assets. Under these circumstances, and given the Debtor's current financial status, the Debtor believes that no institutional lender would provide financing to the Debtor other than on a senior secured and superpriority basis, priming the respective liens and security interests of Whitney and Mr. Becnel in the Debtor's assets. To date, these efforts have been unsuccessful. The Debtor believes that the DIP Facility, as proposed, offers the Debtor the greatest degree of flexibility with the least impact upon the existing prepetition financing structure. As noted, the liens granted the DIP Lender will be junior in all respects to those liens existing in favor of or granted to Whitney in or against, without limitation, the Whitney Prepetition Collateral, and those liens existing in favor of or granted to Mr. Becnel in or against, without limitation, the Becnel Prepetition Collateral, respectively, or re-granted to Whitney and Mr. Becnel, respectively, as described in this Motion. Accordingly, the Debtor believes that the financing arrangement proposed under the DIP Facility represents the best available to it at this time.

36.     Moreover, in the Debtor's business judgment, the DIP Facility is clearly necessary to preserve assets of its estates. As the Budget reflects, the Debtor cannot operate through the use of cash collateral, alone. The DIP Facility alleviates this cash flow problem by providing the Debtor with additional borrowing capacity giving it sufficient funds with which to operate its business. The Debtor requires immediate access to the funds available under the proposed DIP Facility in order to ensure that its business operations continue uninterrupted and are maintained and enhanced for the benefit of its estate, its creditors and its employees. These funds are necessary for the Debtor to meet its liquidity and capital needs in the immediate future pending a final hearing on the Motion. Without the immediate access to these funds and the increased availability associated with the DIP Facility, the Debtor will not be able to meet its

customer commitments, pay employee wages and benefits, or pay its post-petition ordinary course of business obligations.  Any potential disruptions of the Debtor's operations would be devastating to the Debtor at this critical juncture.  The inability of the Debtor to obtain sufficient liquidity through the DIP Facility and to make timely payments on certain obligations will result in a permanent and implausible loss of business for the Debtor, causing a loss of value to the detriment of Debtor and all parties in interest in this chapter 11 case.  Finally, the Debtor believes that the implementation of the DIP Facility will be viewed favorably by its employees, suppliers and customers and thereby greatly enhance its sale efforts.  In short, the ultimate success of the Debtor's chapter 11 case hinges, to a large extent, upon entering into and drawing funds under the DIP Facility.

37.     For the reasons discussed above, the Debtor submits that it has exercised sound business judgment in determining that the DIP Facility represents the best available financing available, is in the best interest of the estate, and contains terms that are fair and reasonable under the circumstances.  Accordingly, the Debtor requests authority to enter into the DIP Facility, borrow funds from the DIP Lender thereunder, and take the other action contemplated and requested herein.

### NEED FOR INTERIM USE OF CASH COLLATERAL AND DIP FUNDING

38.     Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 of the Bankruptcy Code and to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the use of cash collateral

and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

39.     The Debtor requires the immediate use of cash collateral to pay present operating expenses, including but not limited to payroll, to pay vendors to ensure a continued supply of goods essential to the Debtor's continued viability, utility providers, and taxes, as well as to pay fees and expenses related to this Chapter 11 case, including the fees of professionals.  Thus, the use of the cash collateral is necessary to avoid immediate and irreparable damage to the Debtor's estate, and the Debtor states that interim relief pursuant to Bankruptcy Rule 4001 is appropriate. Further, as noted above, it is critical to the success of this chapter 11 case, that the Debtor be able to obtain debtor in possession financing.  Based on the current status of its business, and as reflected in the Budget, it is also critical that the Debtor be permitted to enter into such financing facility and to draw funds thereunder sooner than the 14 days' notice required under Bankruptcy Rule 4001 for a final hearing on this Motion in order to operate its business and preserve value at this critical juncture.  The Debtor believes that it will suffer immediate and irreparable harm in the absence of an interim hearing and approval of interim borrowings under the DIP Facility.

40.     Therefore, the Debtor requests that the Court (a) conduct an expedited hearing with respect to the Interim Cash Collateral/DIP Order, a proposed copy of which is attached hereto as Exhibit B (the "Interim Order"), and (b) schedule the Final Hearing on a final Cash Collateral/DIP Order at the earliest possible date in accordance with Bankruptcy Rule 4001(c), but in no event later than fourteen (14) days from entry of the proposed Interim Order.

41.     Local Rules 4001-2 and 4001-3 require that certain provisions contained in a proposed form of cash collateral or financing order be highlighted ("the Highlighted Provisions"), and that justification for the inclusion of such Highlighted Provisions must be

provided. The Debtor submits that the proposed Interim Order does **not** contain **any** of the provisions that would otherwise need to be highlighted under Local Rules 4001-2 and 4001-3. Accordingly, there being no provisions to highlight, there is no need for, and the Debtor does not attach, a checklist in the form that would otherwise would be required by Local Rule 4001-2(b)(3) identifying the location and type of each Highlighted Provision.

## NOTICE

42.     A copy of this Motion has been served on the parties on the attached service list in the manner indicated. The service list includes the following parties:

> (i)     the Office of the United States Trustee;
> (ii)    the Debtor's twenty (20) largest unsecured creditors as identified in its chapter 11 filing;
> (iii)   Whitney and
> (iv)    Mr. Becnel.

43.     The Debtor will also serve a copy of any Order granting a preliminary hearing on the request in this Motion that the Interim Order be entered on those parties listed in the foregoing paragraph by overnight express mail.  Under the circumstances, notice of this Motion and of any preliminary hearing on this Motion is sufficient and no further notice should be required.

44.     The Debtor further respectfully request that the Court schedule the Final Hearing and authorize the Debtor to serve a copy of the signed Interim Order (which fixes the time and date for the filing of objections) by first-class mail upon the same parties served with this Motion and any party who files a request for notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002 prior to the date set forth in the Interim Order for service of notice of the Final Hearing. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2.

## WAIVER OF REQUIREMENT TO FILE MEMORANDUM OF LAW

45.     The Debtor states that this Motion does not present any novel issues of law requiring briefing and that the Motion adequately describes the issues presented. Therefore, the Debtor requests that the Court waive the requirement pursuant to Local Rule 9013-1(a) for a memorandum in support of this Motion.

## NO PRIOR REQUEST

46.     No previous request for the relief sought herein has been made to this Court or any other court.

For the various reasons set forth in this Motion, the Debtor states that cause exists for the Motion to be granted.

Respectfully submitted

*/s/ Richard K. Stovall*
Thomas R. Allen        (0017513)
Richard K. Stovall      (0029978)
J. Matthew Fisher       (0067192)
Erin L. Pfefferle       (0084984)
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH  43215
Telephone:     (614) 221-8500
Facsimile:     (614) 221-5988
E-mail:        allen@aksnlaw.com
               stovall@aksnlaw.com
               fisher@aksnlaw.com
               pfefferle@aksnlaw.com
*Proposed Counsel for STAR Dynamics Corporation*
*Debtor and Debtor in Possession*

20

**EXHIBT A**

**BUDGET**

# DIP Funding Budget

1/7/2014

$000's

| | 2014 1st Quarter 2014 | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | **1st Quarter** | | |
| BAE / UK GTARS | 123.6 | | | | | 81.1 | | | 42.5 | | | | | |
| BAE Australia - LOPS | 0.0 | | | | | | | | | | | | | |
| BAE Australia - 200 Hrs Support Contract | 0.0 | | | | | | | | | | | | | |
| BAE New Hampshire | 29.1 | | | 29.1 | | | | | | | | | | |
| BAE New Hampshire - Misc | 0.0 | | | | | | | | | | | | | |
| Berrie Hill Research | 142.5 | | | | | | | 142.5 | | | | | | |
| Carderock System 1 | 121.9 | | | | | | | | | | | 121.9 | | |
| French CEA Support Contract - A&S | 2.3 | | 2.3 | | | | | | | | | | | |
| General Dynamics - RRRP - CLIN 1, 2 & 5 | 0.0 | | | | | | | | | | | | | |
| Korea Agency for Defense Development (ADD) | 127.7 | | | | | | | | | | | 127.7 | | |
| MIRTS Sys 1 | 900.0 | | | | | | 300.0 | | | | | | 600.0 | |
| NESDOR - GOI - 16133 (support) | 28.9 | | | | | | | | 28.9 | | | | | |
| Orbit - Cobham | 52.6 | | 52.6 | | | | | | | | | | | |
| URS | 2.6 | | 2.6 | | | | | | | | | | | |
| Other | 55.3 | 55.3 | | | | | | | | | | | | |
| **Revenue New Programs** | 1,586.5 | 55.3 | 57.5 | 29.1 | 0.0 | 81.1 | 300.0 | 171.4 | 42.5 | 0.0 | 0.0 | 249.6 | 600.0 | 0.0 |
| **Cash In From Revenue** | 1,586.5 | 55.3 | 57.5 | 29.1 | 0.0 | 81.1 | 300.0 | 171.4 | 42.5 | 0.0 | 0.0 | 249.6 | 600.0 | 0.0 |
| **Total Available Cash (incl prior month end balance)** | 1,594.9 | 63.7 | 196.2 | 31.4 | 13.3 | 119.4 | 390.9 | 175.1 | 63.3 | 84.4 | 43.3 | 267.3 | 702.5 | 223.0 |
| **Approved DIP Funding Required** | **2,525.0** | **75.0** | **500.0** | **150.0** | **500.0** | **0.0** | **175.0** | **50.0** | **500.0** | **75.0** | **500.0** | **0.0** | **0.0** | **0.0** |
| **Spending** | | | | | | | | | | | | | | |
| 1) Detail Vendor spending | 937.7 | 0.0 | 178.1 | 158.1 | 6.5 | 10.0 | 46.4 | 186.2 | 23.1 | 111.1 | 19.7 | 164.8 | 23.7 | 10.0 |
| 2) Misc projects materials | 0.0 | | | | | | | | | | | | | |
| 3) Major Projects Materials | | | | | | | | | | | | | | |
|   - BAE Warton materials - 58000 | 0.0 | | | | | | | | | | | | | |
|   - MIRTS | 0.0 | | | | | | | | | | | | | |
|   - China Lake | 0.0 | | | | | | | | | | | | | |
|   - MODOTS | 0.0 | | | | | | | | | | | | | |
|   - Berrie Hill | 0.0 | | | | | | | | | | | | | |
|   - URS | 0.0 | | | | | | | | | | | | | |
|   - Synthesizer | 0.0 | | | | | | | | | | | | | |
|   - DAQ3 | 0.0 | | | | | | | | | | | | | |
|   - Digitizer | 0.0 | | | | | | | | | | | | | |
|   - Clutter Canceller | 0.0 | | | | | | | | | | | | | |
|   - HPA's | 0.0 | | | | | | | | | | | | | |
|   - RRRP per B Fresco | 0.0 | | | | | | | | | | | | | |
|   - NESDOR | 0.0 | | | | | | | | | | | | | |
|   - RCS | 0.0 | | | | | | | | | | | | | |
|   - Korea ADD | 0.0 | | | | | | | | | | | | | |
|   - Carderock | 0.0 | | | | | | | | | | | | | |
|   - Other Major programs | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 4) Whitney National Bank | | | | | | | | | | | | | | |
|   Term Loan Principal & Interest | 150.0 | | 50.0 | | | | 50.0 | | | | 50.0 | | | |
|   Franklin County Finance Authority | 0.0 | | | | | | | | | | | | | |
|   Israeli Letter of Credit Fee | 18.1 | | | | | | | 18.1 | | | | | | |

# DIP Funding Budget
### 1/7/2014
$000's

| | 1st Quarter 2014 | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bank Charges | 0.0 | | | | | | | | | | | | | |
| Whitney Bank Visa - A (Julie) | 10.5 | | | | | 3.5 | | | | 3.5 | | | | 3.5 |
| - B (DENISE) | 4.5 | | | | | 1.5 | | | | 1.5 | | | | 1.5 |
| 4)Total banking | 183.1 | 0.0 | 50.0 | 0.0 | 0.0 | 5.0 | 50.0 | 18.1 | 0.0 | 5.0 | 50.0 | 0.0 | 0.0 | 5.0 |
| | | | | | | | | | | | | | | |
| 5) capital | 0.0 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| 6) travel | 50.0 | | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | | | | | | | |
| | | | | | | | | | | | | | | |
| 7) Other | 0.0 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| 8) Consultants | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | |
| 9) Payroll - Net | 1,475.4 | | 245.9 | | 245.9 | | 245.9 | | 245.9 | | 245.9 | | 245.9 | |
| - Taxes | 923.4 | | 153.9 | | 153.9 | | 153.9 | | 153.9 | | 153.9 | | 153.9 | |
| - 401K | 320.4 | | 53.4 | | 53.4 | | 53.4 | | 53.4 | | 53.4 | | 53.4 | |
| - FUTA | 3.5 | | | | | 3.5 | | | | | | | | |
| - Colonial Life | 2.4 | | 0.4 | | 0.4 | | 0.4 | | 0.4 | | 0.4 | | 0.4 | |
| - TASC | 13.2 | | 2.2 | | 2.2 | | 2.2 | | 2.2 | | 2.2 | | 2.2 | |
| 9)Total Payroll | 2,738.3 | 0.0 | 455.8 | 0.0 | 455.8 | 3.5 | 455.8 | 0.0 | 455.8 | 0.0 | 455.8 | 0.0 | 455.8 | 0.0 |
| | | | | | | | | | | | | | | |
| 10) Sales Taxes | 2.7 | | | | 2.7 | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Total Spend (cash out) | 3,911.8 | 0.0 | 693.9 | 168.1 | 475.0 | 28.5 | 562.2 | 204.3 | 478.9 | 116.1 | 525.5 | 164.8 | 479.5 | 15.0 |
| | | | | | | | | | | | | | | |
| General Account Balance | 208.0 | 138.7 | 2.3 | 13.3 | 38.3 | 90.9 | 3.7 | 20.8 | 84.4 | 43.3 | 17.7 | 102.5 | 223.0 | 208.0 |

## Debt Balances

| | | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Whitney Bank Term Loan | 6,704.2 | 6,769.9 | 6,769.9 | 6,769.9 | 6,769.9 | 6,749.0 | 6,749.0 | 6,749.0 | 6,749.0 | 6,728.1 | 6,728.1 | 6,728.1 | 6,728.1 | 6,704.2 |
| Additional Draw / (Repayment) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | |
| T Becnel Loan Balance | 33,830.0 | 31,305.0 | 31,805.0 | 31,955.0 | 32,455.0 | 32,455.0 | 32,630.0 | 32,680.0 | 33,180.0 | 33,255.0 | 33,755.0 | 33,755.0 | 33,755.0 | 33,755.0 |
| Additional Draw / (Repayment) | 2,525.0 | 75.0 | 500.0 | 150.0 | 500.0 | 0.0 | 175.0 | 50.0 | 500.0 | 75.0 | 500.0 | 0.0 | 0.0 | 0.0 |

## Letter of Credit Balance

| | | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IAF (NESDOR - LOC #SR54588) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| GOI (MIRTS - LOC #SR53968) | 2,375.2 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 2,375.2 | 2,375.2 | 2,375.2 | 2,375.2 | 2,375.2 |
| GOI (SDRMS - LOC #SR53969) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total | 2,375.2 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 5,349.8 | 2,375.2 | 2,375.2 | 2,375.2 | 2,375.2 | 2,375.2 |

## A/P

| | | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADP Fees | 0.0 | | | | | | | | | | | | | |
| AETNA - Dental | 34.4 | | 8.6 | 8.6 | | | 8.6 | | | | 8.6 | | | |
| AFCO 1 - (general Insurance) | 59.6 | | 14.9 | 14.9 | | | 14.9 | | | | 14.9 | | | |
| AFCO 2 - (D&O insurance) | 11.6 | | 2.9 | 2.9 | | | 2.9 | | | | 2.9 | | | |
| Allen Kuehnle Stovall & Newman | 100.0 | | | | | | | | | 100.0 | | | | |
| AEP- American Electric Power | 14.0 | | | 5.0 | | | 4.8 | | | | 4.2 | | | |
| AT&T | 0.6 | | 0.2 | | | | | | | | 0.2 | | | |
| SBC / AT & T - fax | 0.3 | | 0.1 | | | 0.1 | | | | | 0.1 | | | |
| BECO Management - Herndon Rent & Power | 27.9 | | 9.3 | | | | 9.3 | | | | 9.3 | | | |
| BECO Management - Annual Surcharge/Utilities | 0.9 | | 0.3 | | | | 0.3 | | | | 0.3 | | | |
| Bolwerk, Tim | 0.0 | | | | | | | | | | | | | |
| Brandywine Capital Associates | 0.0 | | | | | | | | | | | | | |
| Columbia Gas of Ohio - 4455 Reynolds | 6.0 | | 2.0 | | | | 2.0 | | | | 2.0 | | | |
| Columbus City Treasurer - Water bill | 1.8 | | | 0.6 | | | 0.6 | | | | | | | 0.6 |
| Dell Financial Services Lease | 0.0 | | | | | | | | | | | | | |
| Dell Financial Services Lease | 0.0 | | | | | | | | | | | | | |
| Dell Financial Services Lease | 0.0 | | | | | | | | | | | | | |

## DIP Funding Budget
1/7/2014
$000's

| | 2014 1st Quarter 2014 | 1st Quarter | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
| Edward Leonard - Hilliard Property Tax | 46.7 | | | | | | | 46.7 | | | | | | |
| Electro Ren- Lease | 17.4 | | 6.3 | 3.7 | | | | | 3.7 | | | | 3.7 | |
| Electro Ren- Lease | 0.6 | | | 0.2 | | | | | 0.2 | | | | 0.2 | |
| Electro Ren- Lease | 0.6 | | | 0.2 | | | | | 0.2 | | | | 0.2 | |
| Electro Ren- Lease | 14.7 | | | 4.9 | | | | | 4.9 | | | | 4.9 | |
| Electro Ren- Lease | 31.8 | | | 10.6 | | | | | 10.6 | | | | 10.6 | |
| Englefield Oil Company | 0.0 | | | | | | | | | | | | | |
| FEDEX - Herndon / Florida | 0.0 | | | | | | | | | | | | | |
| FEDEX - Hilliard | 0.0 | | | | | | | | | | | | | |
| FEDEX Freight | 0.0 | | | | | | | | | | | | | |
| Galloway Airport Authority | 10.5 | | 3.5 | | | | | 3.5 | | | | 3.5 | | |
| Hyundai Logistics | 0.0 | | | | | | | | | | | | | |
| Konica Minolta | 0.0 | | | | | | | | | | | | | |
| Leaf Financial (new copier lease) | 0.0 | | | | | | | | | | | | | |
| Life Insurance | 40.0 | | 10.0 | 10.0 | | | | 10.0 | | | | 10.0 | | |
| Master Maintenance LLC | 0.0 | | | | | | | | | | | | | |
| McMaster-Carr Supply Co. | 0.0 | | | | | | | | | | | | | |
| McKelvey, Christa | 0.0 | | | | | | | | | | | | | |
| Midwest Aerial Photography | 0.0 | | | | | | | | | | | | | |
| NEC Financial Services | 0.0 | | | | | | | | | | | | | |
| Pitney Bowes | 0.0 | | | | | | | | | | | | | |
| Purchase Power | 0.0 | | | | | | | | | | | | | |
| Qualtrax | 0.0 | | | | | | | | | | | | | |
| Royal Bank of America | 0.0 | | | | | | | | | | | | | |
| RUMPKE | 0.0 | | | | | | | | | | | | | |
| Sanese Services - AVI Food Systems | 0.0 | | | | | | | | | | | | | |
| Shred-It Columbus | 0.0 | | | | | | | | | | | | | |
| Snyder & Company | 0.0 | | | | | | | | | | | | | |
| Staples Business Advantage | 0.0 | | | | | | | | | | | | | |
| Star Dynamics Investments  LLC - rent | 79.5 | | 26.5 | | | | | 26.5 | | | | | 26.5 | |
| United Health Care | 335.0 | | 77.0 | 86.0 | | | | 86.0 | | | | | 86.0 | |
| UPS | 0.0 | | | | | | | | | | | | | |
| US Bankruptcy Trustee | 6.5 | | | | 6.5 | | | | | | | | | |
| VAR Resources | 0.0 | | | | | | | | | | | | | |
| Verizon Wireless | 10.5 | | 3.5 | | | | | | 3.5 | | | | 3.5 | |
| Viper Protection Services | 1.5 | | 1.0 | 0.5 | | | | | 0.5 | | | | 0.5 | |
| Vision Service Plan | 3.0 | | 1.0 | | | | | | 1.0 | | | | | |
| XO Communications (phone system) | 13.5 | | 4.5 | | | 4.5 | | | | | | 4.5 | | |
| Miscellaneous | 67.5 | | 7.5 | 10.0 | | 10.0 | | 10.0 | | 10.0 | | | 10.0 | 10.0 |
| Total | 937.7 | 0.0 | 178.1 | 158.1 | 6.5 | 10.0 | 46.4 | 186.2 | 23.1 | 111.1 | 19.7 | 164.8 | 23.7 | 10.0 |

### Consultants

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Compiled Designs (K Bailey/J Alders) | 0.0 | | | | | | | | | | | | | |
| Edgewater Technologies | 0.0 | | | | | | | | | | | | | |
| Landers | 0.0 | | | | | | | | | | | | | |
| PEGASI | 0.0 | | | | | | | | | | | | | |
| Pinpoint Dynamics (Schleder) | 0.0 | | | | | | | | | | | | | |
| IBD | 0.0 | | | | | | | | | | | | | |
| Steve Monas | 0.0 | | | | | | | | | | | | | |
| Steve Monas - expenses | 0.0 | | | | | | | | | | | | | |
| | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |

**EXHIBIT B**

**FORM OF PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re** | : | **Case No. 13-59657** |
| | : | |
| **STAR Dynamics Corporation** | : | **Chapter 11** |
| | : | |
| **Debtor.** | : | **Judge Charles M. Caldwell** |

<u>**INTERIM ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION; AND AUTHORIZING LIMITED
POST-PETITION SECURED FINANCING WITH PRIORITY AS AN ALLOWED
ADMINISTRATIVE EXPENSE [Doc. No.___]**</u>

This matter having come before the Court, upon Motion of STAR Dynamics Corporation,

the above-captioned debtor and debtor in possession ("Debtor"), for an order, pursuant to 11

U.S.C. §§ 105, 361, 363, 364(c), 503(b) and Federal Rule of Bankruptcy Procedure 2002, 4001,

6004 and 9014, on initially an interim basis, and eventually on a final basis, authorizing use of

cash collateral, and authorizing the Debtor to obtain post-petition, secured financing in an

aggregate principal amount of up to $2,525,000, on an administrative expense priority basis (the

"Motion") [Docket No. __], and after notice and an expedited preliminary hearing held January

__, 2014 (the "Interim Hearing"); and the Court having reviewed and considered the Motion,

together with all exhibits filed in support thereof, and having completed the preliminary hearing

in accordance with §§ 363 and 364 of the Code, Bankruptcy Rule 4001 and LBR 4001-2(d) and

4001-3(d), and for good cause shown, hereby finds that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. § 1334 and reference from the District Court for the Southern

District of Ohio pursuant to 28 U.S.C. § 157; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); (c) venue of this chapter 11 case and the Motion is proper pursuant to §§ 1408 and

1409 and Local Bankruptcy Rules; (d) notice of the Motion and the Hearing was sufficient under

the circumstances; (e) an immediate need exists for the Debtor to use cash collateral and to

obtain credit to assure the orderly administration of its estate and that without such use and credit

the Debtor's estate will be irreparably harmed; (f) the legal and factual basis set forth in the

Motion and at the preliminary hearing otherwise establishes just cause for the relief granted

herein; (g) the express written consent of the guarantors -- Thomas R. Becnel and Silver Shells,

LLC -- of Debtor's indebtedness to Whitney Bank ("Whitney") to *inter alia* any amendments or

modifications of the terms and conditions of the indebtedness owed Whitney, which amendments

or modifications may arise, either expressly or implicitly, from any relief (whether interim or

final) granted in connection with Debtor's Motion or in this Order having been offered and filed

by Debtor, and admitted, into evidence at the hearing on this Motion, such express written

consent of those guarantors in form and substance acceptable to and approved by Whitney; and

(h) Debtor having agreed that, upon request by Whitney, Debtor shall immediately file a motion

seeking, on an expedited basis, this Court's formal approval of an extension, with written

consent of the guarantors, of the Whitney term loan facility, which matures on January 31, 2014,

and Debtor shall use its best efforts to obtain such approval by no later than January 30, 2014;

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:

1.      The Motion shall be, and hereby is, GRANTED on an interim basis.

2.      Capitalized terms not otherwise defined herein have the meanings ascribed in the Motion.

3.      The Debtor is authorized, on an interim basis, to use cash collateral through the Final Hearing as set forth below, in the amounts set forth in the Budget and on the terms set forth herein; and in its sole discretion, to obtain post-petition credit under the DIP Facility under the terms and conditions as specified in the Motion.

4.      Pursuant to § 363 of the Bankruptcy Code, cash collateral shall not be used, leased, sold or expended, directly or indirectly, by or on behalf of Debtor except as provided herein.

5.      The Debtor will maintain its bank accounts at a federally insured depository institution, and each such account shall be a STAR Dynamics Corporation debtor in possession account.  Debtor shall, upon receipt of cash collateral generated after the entry hereof, or of funding under the DIP Facility, take or cause to be taken any and all action necessary to cause all of said cash collateral and funding to be immediately deposited into a STAR Dynamics Corporation debtor in possession account.

6.      Subject to all other terms and conditions specified herein, all bills, invoices and statements for necessary expenses incurred in connection with the operation of Debtor's business shall be paid when due from the funds deposited or to be deposited in any STAR Dynamics Corporation debtor in possession account.  For purposes of this Order, such necessary operating expenses of Debtor are defined as those expenditures made to meet its post-petition expenditures for payroll, taxes, utilities, make lease payments related to its limited operations, purchase

necessary supplies and service, replace its inventory at its remaining location, and perform other necessary functions in the regular course of its business, all as more fully identified in the Budget. The Budget also reflects anticipated payments of the Debtor on the Whitney term loan facility and other Whitney credit accommodations. All expenditures and payments set forth in the Budget and approved by this Court shall be made directly from a STAR Dynamics Corporation debtor in possession account.

7. Debtor shall, for each month during the pendency of this proceeding, file with the Court such financial reports as may be required by the Office of the United States Trustee at the time required under the rules of the Office of the U. S. Trustee (i.e., by the 20th day of the following month).

8. Notwithstanding the provisions of Bankruptcy Code § 552(a), and in addition to any security interests that may be granted by Bankruptcy Code § 552(b), to the extent that each of Whitney and Mr. Becnel have valid and subsisting security interests in cash collateral, and to the extent of the value of cash collateral subject to any such valid and subsisting security interests of Whitney and Mr. Becnel, respectively:

a. the respective security interests and liens of Whitney and Mr. Becnel in cash collateral are hereby continued and re-granted, and neither Whitney nor Mr. Becnel shall be required to take any other action to perfect the respective lien(s) re-granted to each of them hereunder, which liens and security interests granted or re-granted respectively to Whitney and Mr. Becnel shall maintain their superiority in all respects (with Whitney's interests to be and remain superior to those of Mr. Becnel), including without limitation in terms of ranking and payment, regardless of any dismissal or conversion of this Chapter 11 case; and

b.      Whitney and Mr. Becnel are hereby granted liens and security interests in Debtor's assets acquired subsequent to the Petition Date, and in Debtor's accounts receivable, general intangibles and other revenues generated by the operation of Debtor's business subsequent to the Petition Date, the proceeds thereof, and all collections thereof, to secure any reduction in the value of the cash collateral subject to any such respective valid and subsisting interests of Whitney and Mr. Becnel, respectively, at the Petition Date, in the same priority in such assets comprising cash collateral as such interests may have existed on the Petition Date, which liens and security interests granted or re-granted to Whitney shall maintain their superiority in all respects, including without limitation in terms of ranking and payment, to the liens and security interests of any other party and regardless of any dismissal or conversion of this Chapter 11 case..

9.      The liens granted pursuant to paragraphs 8(a) and (b) above, shall relate back to the Petition Date, and shall attach to any and all cash collateral of Debtor, whether generated prior to the Petition Date or thereafter, deposited or to be deposited in a STAR Dynamics Corporation debtor in possession account.

10.      To secure all obligations of the Debtor in connection with the DIP Facility, the DIP Lender is hereby granted a fully perfected security interest in all assets, whether now existing or hereafter arising, of the Debtor, including all substitutions, replacements, accessions, products or proceeds thereof, subject and junior in all respects, including without limitation in terms of ranking and payment, to the liens and security interests of or held by Whitney, including without limitation in and against the Whitney Prepetition Collateral, Mr. Becnel, including without limitation in and against the Becnel Prepetition Collateral, and any other party existing as of the Petition Date, and to the post-petition liens and security interests granted and/or re-

granted to Whitney and Mr. Becnel, respectively, hereunder or under any final Order granting the Motion; provided, however, that the security interest and lien granted to the DIP Lender hereby shall not encumber any cause of action accruing in favor of the Debtor's estate under chapter 5 of the Bankruptcy Code.

11.     Whitney shall have the right to file any objection or response to the Motion, or to any final relief sought by the Debtor, for purposes of the Final Hearing.

12.     Evidence or perfection of all security interests and liens granted or re-granted, or recognized or acknowledged to exist, in favor of Whitney, Mr. Becnel and the DIP Lender, respectively, pursuant to this Order shall not require any further filings by Whitney, Mr. Becnel or the DIP Lender, including without limitation any UCC Financing Statements, and all such security interests and liens shall be binding and effective as to and against the interests of all other interested parties, including Debtor, and shall survive and continue in favor of Whitney, Mr. Becnel and the DIP Lender, respectively, despite any conversion or dismissal of this Chapter 11 case.

13.     The provisions of this Interim Order authorizing Debtor's limited use of cash collateral and authorizing PLC's post-petition secured financing shall remain in full force and effect pending conclusion of a final hearing upon the Motion as contemplated in Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  The termination of Debtor's authority to use cash collateral hereunder, or to incur such financing hereunder, shall not affect any other term or provision of this Order.  ***A final hearing (the "Final Hearing") to consider the Motion and the relief sought therein shall be held on January __, 2014, at __:__ _.m. Eastern Time, at the United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215 in Courtroom C.***

14.     The entry of this Order and the scheduling of the Final Hearing upon the Motion shall be immediately noticed by Debtor to all parties who have appeared or otherwise responded to the Motion or who have filed a notice of appearance in this case, the office of the United States Trustee, Debtor, Debtor's 20 largest unsecured creditors as identified in its chapter 11 petition, Whitney and Mr. Becnel. ***Any objections to the relief sought in the Motion must be filed with the Court and served upon the undersigned counsel on or before 5:00 p.m. Eastern Time on January __, 2014.*** Timely filed and served objections shall be heard at the Final Hearing upon the Motion. ***In the event there are no timely filed objections to the relief sought in the Motion, the Final Hearing will be cancelled, and Debtor may thereafter submit a proposed final cash collateral order to the Court for consideration.***

IT IS SO ORDERED.

SUBMITTED AND APPROVED BY:

/s/Richard K. Stovall
Thomas R. Allen        (0017513)
Richard K. Stovall      (0029978)
J. Matthew Fisher       (0067192)
Erin L. Pfefferle       (0084984)
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH  43215
Telephone:     (614) 221-8500
Facsimile:     (614) 221-5988
E-mail:        allen@aksnlaw.com
               Stovall@aksnlaw.com
               fisher@aksnlaw.com
               pfefferle@aksnlaw.com

*Proposed Counsel for STAR Dynamics Corporation*

*Copies to: Default List plus Top 20*

###