**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 13-59657 |
| | : | |
| **STAR Dynamics Corporation** | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Charles M. Caldwell |

**OBJECTION OF AD HOC COMMITTEE OF EMPLOYEES TO
MOTION OF STAR DYNAMICS CORPORATION, DEBTOR AND
DEBTOR IN POSSESSION, FOR AN ORDER AUTHORIZING THE SALE
OF SUBSTANTIALLY ALL THE ASSETS OF THE DEBTOR (WITH
EXCEPTIONS) FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES
TO PROPOSED BUYER UTILIZING SECURED CREDITOR'S CREDIT
BID, WITH PROVISIONS TO ALLOW FOR COMPETITIVE BIDDING [Doc. No. 316]**

The Ad Hoc Committee of Employees of STAR Dynamics Corporation (the "Employee Committee") objects to the STAR Dynamics Corporation's (the "Debtor") motion (Doc. No. 316) (the "Motion"), seeking an order authorizing the sale of substantially all of the Debtor's assets to Mwagusi, LLC ("Mwagusi") via a credit bid that will bring no cash into the Debtor's estate. The Employee Committee opposes the proposed sale because it will likely leave the Debtor's estate administratively insolvent and unable to pay the employees for services they have rendered postpetition. While the Employee Committee and other administrative creditors will bear the burden of that insolvency, Mwagusi, which is owned and controlled by Thomas R. Becnel, who together with members of his family owns 90% of the Debtor, will take the Debtor's most valuable remaining assets. Resort Development of Destin, Inc. ("RDDI"), which is also controlled by Mr. Becnel, will avoid paying employee wages and benefits connected with the preservation and maximization of these assets, even though it has already agreed to bear the burden of the employee wages and benefits under the cash collateral orders and related stipulations entered in this case.

1

**BACKGROUND**

1. On December 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in this chapter 11 case.

2. The Employee Committee consists of employees who worked for the Debtor after the Petition Date and who were laid off when the Debtor shut down operations on August 11, 2014. None of the members of the Employee Committee own any equity in the Debtor.[1] When the Debtor laid off the members of the Employee Committee, they were not paid for services rendered from and after July 20, 2014. In addition, the Debtor failed to reimburse certain employees for expenses, such as travel costs, they incurred while performing postpetition services for the Debtor. While the membership of the Employee Committee is still growing, it currently estimates that its members are owed in aggregate approximately $370,000 by the Debtor in unpaid postpetition compensation and reimbursement of employee wages.

3. A series of orders have been entered in this case authorizing the usage of cash collateral. *See* Doc. Nos. 19 (consent of Whitney Bank), Doc. 105 (interim order), Doc. 171 (final order), Doc. 239 (stipulation extending final order), Doc. 286 (stipulation modifying final order), Doc. 291 (consent of RDDI to cash collateral usage). As is typical in chapter 11 cases, the cash collateral orders contained approved budgets allowing for the usage of cash collateral,

---

[1] Dr. R. Jerry Jost, who is the President and CEO of the Debtor and also owns a 10% interest in the Debtor, is not a member of the Employee Committee. The Employee Committee is not requesting any relief with respect to any unpaid wages owed to Mr. Jost.

which included the wages of the employees among the approved items to be paid out of the cash collateral of RDDI, as successor to Whitney Bank, and other secured creditors.

4.  On July 22, 2014, the Debtor filed its operating report for the month of June 2014 (Docket No. 301) (the "June Operating Report").[2] According to the June Operating Report, the Debtor had $364,914.34 in cash on June 30, 2014 and accounts receivable of $275,585.54. The postpetition payables reflected in the June Operating Report for just employee wages and salaries totaled $722,696.82, which was in excess of the cash and accounts receivable reflected on the Debtor's books. The Employee Committee believes that the Debtor currently has significantly less cash than is reflected in the June Operating Report and that some of the accounts receivable, in particular the receivable related to BAE Systems Technology Solutions & Services, Inc. ("BAE"), will be difficult and expensive to collect and thus are not worth the amounts on which they are listed on the Debtor's financial statements.

## ARGUMENT

5.  Section 363(k) of the Bankruptcy Code permits a court to limit the right of a secured creditor to credit bid its claim for "cause." The right to credit bid is not absolute. *See In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 315-16 (3d Cir. 2010). The Bankruptcy Code does not establish a specific standard for what constitutes "cause" to limit the right to credit bid. In fact, a court "may deny a lender the right to credit bid in the interest of any policy advanced by the [Bankruptcy Code]." *See In re Fisker Automotive Holdings, Inc.*, 510 B.R. 55, 60 n. 14 (Bankr. D. Del. 2014).

6.  Under the facts and circumstances of this case, the Employee Committee believes that the cause standard is easily satisfied. Limiting the ability of Mwagusi or RDDI to credit bid

---

[2] The Debtor has not filed any more recent operating report with the Court.

is necessary both to protect the integrity of this court's prior orders on usage of cash collateral and to protect the ability under section 506(c) to surcharge RDDI's collateral to pay the accrued, unpaid postpetition employee wages, benefits and expenses incurred in connection with their services protecting and maximizing the value of this collateral. To allow the credit bid of an insider secured creditor to credit bid without including any cash to push the costs associated with its collateral off on the innocent employees while the creditor enjoys the fruits of the employee's labor is inequitable.

7. When entering the final cash collateral order on January 30, 2014 (Doc. No. 171) (the "Final Cash Collateral Order"), the Court found that "an immediate need existed for the Debtor to use cash collateral and to obtain credit to assure the orderly administration of its estate and that without such use and credit the Debtor's estate will be irreparably harmed on both an interim and final basis." *See* Final Cash Collateral Order at Recital (e). The Debtor was authorized to use cash collateral in accordance with the attached budget. *See id.* The Final Cash Collateral order also said the following about the payment of expenses under the Budget:

> [A]ll bills, invoices and statements for necessary expenses incurred in connection with the operation of Debtor's business *shall be paid* when due from the funds deposited or to be deposited in any STAR Dynamics Corporation debtor in possession account. For purposes of this Order, such *necessary* operating expenses of Debtor are defined as those expenditures made to meet its *post-petition expenditures for payroll*, taxes, utilities, make lease payments related to its limited operations, purchase necessary supplies and service, replace its inventory at its remaining location, and perform other necessary functions in the regular course of its business, all as more fully identified in the Budget.

Final Cash Collateral Order at ¶ 6 (emphasis added). This provision has not been altered by the subsequent stipulations extending the cash collateral order.

8.     Whitney consented to entry of the Final Cash Collateral Order. *See* Motion Requesting Use of Cash Collateral (Docket No. 91) at 11. Whitney and Mr. Becnel both stipulated to the extension of the Final Cash Collateral Order. *See* Stipulation Extending Final Cash Collateral Order (Docket No. 239). After RDDI acquired Whitney's secured claim, it also consented to the Debtor's use of cash collateral. *See* Consent of Thomas R. Becnel and Resort Development of Destin, Inc. to Limited Use of Cash Collateral (Doc. No. 291).

9.     The Final Cash Collateral Order and the associated stipulations and consents show that the Court and the secured creditors recognized that the Debtor's employees performed valuable, necessary services in terms of maximizing the value of the Debtor's assets, including those in which RDDI is claiming an interest. In fact, the Debtor understood the benefit of the employees when it successfully petitioned the Bankruptcy Court to pay the Employees unpaid prepetition wages. *See* Employee Order (Doc. No. 18). By performing valuable work postpetition, the employees are clearly entitled to administrative expense claims for the work they provided. *See Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110-11 (2d Cir. 1987).

10.     Under the terms of the Final Cash Collateral Order, the Debtor was obligated to pay these employees the actual wages related to the services they performed post-petition in satisfaction of these administrative expense claims, but has not done so. If the Debtors' assets were being sold for cash to a third-party, under the terms of the Final Cash Collateral Order these proceeds were *required* to be used to satisfy the employees' actual postpetition wages in connection with protecting and maximizing the value of these assets.

11.     Instead of providing for satisfaction of these obligations which the Court had earlier directed be paid, Mr. Becnel structured a credit bid transaction which provides the Debtor

5

*no* cash to satisfy the payroll obligations incurred to the employees for postpetition services to maximize and protect the value of the assets he is buying. At the same time, Mr. Becnel agreed to arrangements to pay the fees of the Debtor's special counsel Womble, Carlyle, Sandridge & Rice LLP by having other entities he controls transfer $100,000 in cash and certain real property to Womble. *See* Supplemental Statement Regarding Compensation Filed Pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure (Doc. 311). This Debtor also requested (and received) authority to pay prepetition unsecured trade creditor claims as recently as March 5, 2014. *See* Order Granting Motion of STAR Dynamics Corporation, Debtor and Debtor in Possession, Pursuant to 11 U.S.C. §§ 105, 362, 363 & 553 for Authority to Pay Certain Preferred Vendors (Doc. No. 212).

12. If the Debtor were to receive cash for its assets, under the terms of the Final Cash Collateral Order the Debtor would be obligated to satisfy the outstanding wages owed to the Employees. Because Whitney and RDDI already stipulated to these payments, the Debtor could make these payments even if the only funds on hand were cash collateral of RDDI. *See Daniel v. AMCI, Inc. (In re Ferncrest Court Partners, Ltd.)*, 66 F.3d 778, 782-83 (6th Cir. 1995) (finding real estate broker commission could be paid out of secured lender's cash collateral where a lender had consented to the broker trying to sell the property).

13. Even if Whitney (and hence RDDI) had not already consented in the Final Cash Collateral Order to the payment of these obligations, the Debtor would still be able to pay them if the proposed credit bid did not go forward. Under section 506(c) of the Bankruptcy Code, a debtor in possession "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim." Under section 506(c), a secured lender's

collateral can be charged for expenses irrespective of consent if the costs were reasonable, necessary, and of benefit to the secured party. *See Ferncrest*, 66 F.3d at 782.

14. The employees clearly rendered reasonable and necessary services which benefited RDDI and are entitled to reimbursement under section 506(c). Among the services which the employees rendered postpetition for which they have not been compensated are the following:

- Employees worked on the XSTAR product, which General Dynamics is obligated to pay for under a time and material contract.

- Employees worked on Radar Cross Section (RCS) products related to multiple customers of the Debtor. Employees working on RCS projects also worked on product support activities which were underway for Eglin AFB. Employees assigned to RCS projects were also preparing new business proposals related to the BAE GTARS contract.

- Employees worked on the DSR radar product to create the software and hardware intellectual property associated with this product and were integrating and testing the radar system under a China Lake contract.

- Employees worked on various development projects to create software and hardware intellectual property for the Debtor.

- Employees working on Knowbell products created software intellectual property related to the Knowbell and BlueImage R/T products. This included both new development and support activities. Knowbell customers pay annual support fees that support ongoing product support activities.

- Other employees provided necessary administrative services to allow the revenue generating activities described above to proceed.

It is clear under applicable law that it is appropriate to surcharge a creditor's collateral for employee wages and associated expenses related to protecting and increasing the value of the secured lender's collateral. *See, e.g., In re Lunan Family Ltd. P'ship*, 192 B.R. 173, 183 (Bankr. N.D. Ill. 1996) (approving surcharge for withholdings, taxes and insurance premiums for

employees); *In re Phoenix Pipe & Tube, L.P.*, 174 B.R. 688, 691 (E.D. Pa. 1994) (approving surcharge of collateral for employee providing management services).[3]

15. It is appropriate to condition any approval of a transfer of the Debtor's assets to Mwagusi or RDDI pursuant to credit bid, modification of the automatic stay, abandonment or other transfer to them paying sufficient cash to satisfy administrative claims that are obligated to be paid under the Final Cash Collateral Order or by operation of section 506(c) of the Bankruptcy Code. *See In re A-1 Plan & Scaffold Mfg., Inc.*, 437 B.R. 689, 696 (Bankr. D. Kans. 2010). In *A-1,* the Bankruptcy Court for the District of Kansas approved the debtor's retention of a real estate broker to market certain real property. *See id.* at 691. The broker successfully obtained a cash buyer for the property. *See id.* at 692. The secured lender on the property then came forward and submitted a higher credit-bid for the property, but refused to pay the broker commission. *See id.* at 693. The Bankruptcy Court found that the broker's marketing activities had increased the value of the property to the estate and ordered the buyer to pay a sufficient portion of the purchase price to pay the broker for the commission that would have been paid if the sale had closed to the cash buyer at the price it bid. *See id.* at 696. The Court should condition any approval of a sale of assets to Mwagusi or any other party on accrued, but unpaid wages and benefits being satisfied as part of such a sale.

---

[3] To the extent the Court does not order payment of the employees' wages and benefits as part of any sale, the Employees reserve all of their rights with respect to relief under section 506(c) of the Bankruptcy Code or any other applicable law.

Dated: September 12, 2014  
       Columbus, Ohio

Respectfully submitted,

/s/ David A. Beck
David A. Beck (0072868)
Suzanne S. Whisler (0080977)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile:  (614) 365-9145
E-mail: beck@carpenterlipps.com

ATTORNEYS FOR AD HOC COMMITTEE OF EMPLOYEES

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed on September 12, 2014. Notice of this filing was served as indicated below.

    /s/ David A. Beck

By email through the Court's ECF system:

- Julie E. Adkins     jadkins@wcsr.com
- Thomas R Allen     allen@aksnlaw.com, doan@aksnlaw.com
- Asst US Trustee (Col)     ustpregion09.cb.ecf@usdoj.gov
- Lawrence Hackett     larry.hackett@usdoj.gov
- Robert G Hanseman     rhanseman@ssdlaw.com, kroeckner@ssdlaw.com
- Joseph Patrick Hebert     jphebert@liskow.com, cguidry@liskow.com
- Melissa M. Hinds     mhinds@jenner.com
- Michael J Kaczka     mkaczka@mcdonaldhopkins.com, bkfilings@mcdonaldhopkins.com
- Scott A King     scott.king@thompsonhine.com, diane.macleod@thompsonhine.com;mary.romanak@thompsonhine.com
- David R. Kuney     dkuney@sidley.com
- Jeffrey Kurtzman     jkurtzma@klehr.com
- Frederick M Luper     fluper@LNLattorneys.com
- Jennifer L Maffett-Nickelman     THDaytonECF@thompsonhine.com, jennifer.maffett-nickelman@thompsonhine.com
- Andrew Scott Nicoll     anicoll@porterwright.com
- Christopher J Niekamp     cjn@b-wlaw.com
- Joseph C Pickens     jpickens@taftlaw.com, khines@taftlaw.com;knaeder@taftlaw.com
- Landon S Raiford     lraiford@jenner.com
- Kristin E Richner     kristin.richner@squirepb.com
- Donn D Rosenblum     donn.rosenblum@ohioattorneygeneral.gov
- Brian D Shonk     bdshonk@daggerlaw.com, dmh@daggerlaw.com
- Catherine L. Steege     csteege@jenner.com
- Richard K Stovall     stovall@aksnlaw.com, ashton@aksnlaw.com;pfefferle@aksnlaw.com;charfas@aksnlaw.com
- Thomas W. Waldrep     bankruptcy@wcsr.com
- David M Whittaker     dwhittaker@bricker.com
- Mary Anne Wilsbacher     MaryAnne.Wilsbacher@usdoj.gov

By First Class Mail:

Michael D. Chambers
Taft, Stettinius & Hollister, LLP

One Indiana Square
Suite 3500
Indianapolis, IN 46204

David E. Gordon
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street
Suite 5300
Atlanta, GA 30308

Gary W. Marsh
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street
Suite 5300
Atlanta, GA 30308

Pegasi Systems International Inc
1380 rue du Mouleur
Trois-Rivieres (Quebec)
G8Y 6N9 Canada

Sagent Advisors LLC
299 Park Avenue
9th Floor
New York, NY 10171

Michael J. Sullivan
Womble Carlyle Sandridge & Rice LLP
Atlantic Station
271 17th Street, NW, Suite 2400
Atlanta, GA 30363

TW Telecom Inc
10475 Park Meadows Dr #400
Littleton, CO 80124

William C. Wagner
Taft, Stettinius & Holister, LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204